ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JOSIAH BOURNES (CABN 272316)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7181
    FAX: (415) 436-7234
    Josiah.bournes@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ERIC BETANCO, <br><br> Defendant. | CASE NO. 24-CR-247 RS <br><br> UNITED STATES' SENTENCING MEMORANDUM <br><br> Hearing Date: November 12, 2024 <br> Time: 9:30 a.m. |

The government respectfully submits this sentencing memo. The defendant is a recidivist Tenderloin drug dealer who has been undeterred by his prior arrests and convictions. The defendant is 28 years old, and he has been arrested and convicted for trafficking various drugs on multiple occasions in the past several years. When he committed the instant offense (selling cocaine to an undercover officer and possessing additional cocaine and fentanyl on his person), the defendant was on probation in San Francisco County, had 4 state warrants, was on federal supervised release for two federal cases, violated a prior stay-away order, and racked up 8 criminal history points. He sold drugs in San Francisco on three prior occasions (twice in 2019 and once in 2020); two of those cases were federal cases. After he served his prior federal sentence of 14-months, he was removed from the United States in 2021, but returned and sold drugs again. He now needs a graduated punishment to deter his repeated unlawful sales and

1  possession with intent to sell narcotics. The defendant is a danger to the community and has continued to
2  engage in conduct that presents a danger to the community notwithstanding his prior state and federal
3  convictions. The government recommends a guidelines sentence of thirty-seven (37) months to run
4  consecutive to any sentence imposed by the Court for the supervised release violations, to be followed by
5  a 3-year period of supervised release.

## PROCEDURAL HISTORY

On May 1, 2024, a federal grand jury returned an indictment charging the defendant with two-counts in this case (24-CR-00247). (Dkt. 1). Count 1 charges the defendant with Distribution and Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 841(a)(1), and (b)(1)(C)–. Count 2 charges the defendant with Possession with Intent to Distribute Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), and (b)(1)(C). On June 25, 2024, the defendant pled guilty to both counts. PSR ¶ 3. He pled open; there is no plea agreement in this case. PSR ¶ 4.

On February 26, 2024, a Form 12 was also filed for violations of Betanco's supervision in two cases (CR-19-00645-001-RS and CR-20-00217-001), which together total 7 prior controlled substance offenses. Dkt. 39, 3:19-cr-00645-RS. Defendant was on supervised release in the 2019 case for four counts: Possession with Intent to Distribute Cocaine Salt, Possession with Intent to Distribute Cocaine Base, Possession with Intent to Distribute Heroin, and Possession with Intent to Distribute Fentanyl. *Id*. at 1. In the 2020 case, defendant was on supervised release for Possession with Intent to Distribute 40 Grams or More of Fentanyl, Possession with Intent to Distribute 5 grams or More of Methamphetamine, and Possession with Intent to Distribute Heroin. *Id*. The Form 12 includes four violations: (1) failing to contact probation upon return to the United States; (2) committing another crime; (3) unlawfully possessing a controlled substance; and (4) being present in an area he was ordered to stay out of pursuant to condition five of his supervision terms. *Id*. The violations stem from the offense in the instant case (case no. 3:24CR-00247). Defendant also admitted the violations alleged in the Form 12 on June 25, 2024.

## OFFENSE CONDUCT

On January 5, 2024, the San Francisco Police Department was conducting a buy-bust operation in the area of Ellis and Larkin Streets. PSR ¶ 7. The defendant was present in the 600 block of Ellis Street. *Id.* An under-cover officer (UC) began speaking with the defendant. The UC inquired whether the

24-CR-247 RS

defendant had any methamphetamine. *Id.* The defendant replied that he did not. However, during the conversation, the defendant indicated that he had cocaine base. *Id.* The defendant agreed to sell the UC twenty dollars ($20) of cocaine base. *Id.* The UC provided the defendant with twenty dollars in marked city funds. The defendant then took out a sandwich bag which contained a large amount of cocaine base, removed a single rock from the bag, and handed it to the UC. *Id.* The UC gave the arrest signal, and the defendant was promptly arrested at 669 Ellis Street. *Id.* At the time of his arrest, defendant was on probation in San Francisco County, and had four warrants. *Id.*

Officers searched defendant incident to arrest. PSR ¶ 8. The defendant had $335 in various denominations on his person and a plastic bag containing 17.5 grams gross of cocaine base in his jacket chest pocket. *Id.* The defendant also had in his front jacket pocket a plastic bag containing 41 individually packaged bags of suspected fentanyl which weighed 28.5 grams gross. *Id.* SFPD Officers recognized this to be fentanyl based on their training and experience and noted in the report that the lab report would confirm it as such. SFPD Report 240011368 p. 6-8 The cocaine base defendant sold to the UC was weighed on the date of the incident and determined to weigh 3.4 grams gross. PSR ¶ 9. Both the cocaine found on defendant's person and the cocaine that defendant sold tested positive for cocaine base via Tru Narc. The suspected fentanyl tested inconclusive on scene via Tru Narc but this is not uncommon given that fentanyl is commonly mixed with mannitol (a common mixing agent used to cut or dilute fentanyl) or other cutting agents (as the lab report later confirmed the presence of 4-ANPP, a chemical commonly found in fentanyl when it is processed and sold on the street ). *Id*. According to the lab report, one (out of the 41 bags) of fentanyl was tested, and, determined to contain fentanyl with a net weight of .45 grams. One of the bags of cocaine was tested by the lab and it was determined to contain cocaine base with a net weight of 14.24 grams. PSR ¶ 10.

## PROBATION'S CALCULATIONS

The government has reviewed the guidelines calculations in the PSR and the calculations appear to be accurate regarding the cocaine. In total, Probation reached a base offense level of 18, and a total offense level of 15 after a three-point reduction for acceptance of responsibility pursuant to USSG § 3E1.1. PSR ¶ 20. The base offense level is based on a converted drug weight of more than 40 kilograms but less than 60 kilograms. Probation concluded defendant's criminal history score of eight points corresponds to

a criminal history category of IV (four).  PSR ¶ 35-37.  Further, Probation calculates the guideline range to be a term of 30-37 months with a recommendation for 30 months to be followed by a period of supervised release. PSR ¶ 59, Rec p, 1. The weights underlying Probation's calculations include:

   Fentanyl: net of .45 grams and converted drug weight of 1.12 kgs.[1]

   Cocaine Base: net of 14.24 grams along with a converted drug weight of 50.85 kgs.

## GOVERNMENT'S CALCULATIONS REGARDING FENTANYL

The fentanyl calculations in the PSR do not take into account the full amount of fentanyl that was seized from Betanco. The fentanyl in this case was packaged in 41 individual baggies. The Alameda County Crime Lab tested one of the bags and it tested positive as fentanyl.  The photos indicate the fentanyl bags are roughly distributed evenly. The net weight of the fentanyl tested was .45 grams.

The government believes that the full amount of fentanyl (the 41 bags) possessed by the defendant should be counted to determine the net weight of the fentanyl.   It is correct that the lab tested one bag.  That is standard procedure.  Labs test a representative sample of drugs.  That representative sample tested positive for fentanyl.  That sample looks the same and was packaged the same way as all the fentanyl.  *See* Attached Exhibit (photos of drugs and lab report describing drugs and packaging).  All 41 bags were in a plastic bag and they were all in his front jacket pocket.  There are 41 individually packaged bags that are packaged this way for distribution.  Notably, all the cocaine was in his jacket chest pocket.  The legal standard is preponderance of the evidence, and that burden is met here given that all the bags were packaged individually and placed in the same bag in the same jacket pocket and a representative sample tested positive for fentanyl.

.45 grams fentanyl multiplied by 41 bags = 18.45 grams fentanyl. The government notes that the 18.45 grams fentanyl is approximately 10 grams less than the 28.5 grams gross weight of the suspected fentanyl on the scene with the packaging so the government's calculation for the fentanyl has reduced approximately 10 grams from the gross weight. The Sentencing Guidelines dictate that one gram of fentanyl is equal to 2.5 kgs of converted drug weight.

---

[1] PSR ¶ 20 indicates that "one gram of fentanyl equals 2.5 grams converted drug weight." However, the government believes the intent to be 2.5 kgs of converted drug weight according to USSG § 2D 1.1(D) Drug Quantity Table.

18.45 x 2.5 = 46.125 kgs of converted drug weight. USSG § 2D1.1(D).

Combining the 46.125 kgs of converted fentanyl weight with the 50.85 kgs of cocaine base calculated in the PSR results in a converted drug weight of 96.975 grams. This weight corresponds to a base offense level of 22 due to "at least 80 kgs but less than 100 kgs of converted drug weight." USSG § 2D1.1(D)(9). With a 3-point reduction for acceptance of responsibility, pursuant to USSG § 3E11, the total offense level is 19. With a Criminal History Category of IV, this corresponds to a Guideline Range of 46–57 months. However, the government is not recommending this guideline range.

## GOVERNMENT'S CALCULATIONS REGARDING COCAINE

Probation's calculations regarding cocaine are accurate under the U.S. Sentencing Guidelines. Probation's calculations are based on using the converted drug quantity associated with cocaine base also known as crack, which was present in this case. PSR ¶ 20. The Sentencing Guidelines dictate that one gram of cocaine base is equal to 3,571 grams of converted drug weight. PSR ¶ 20; USSG § 2D1.1 App. n. 8(D). The Sentencing Guidelines further indicate that one gram of cocaine (also known as powder cocaine), is equal to 200 grams of converted drug weight. USSG § 2D1.1 App. n. 8(D).

However, the government's position is that powder and crack cocaine should be treated consistently in order to eliminate any sentencing disparity. Thus, the government's calculations below use the powder cocaine calculations.

**Cocaine**: 14.24 grams x 200 grams = 2,848 grams.

2,848 grams % 1,000 = 2.848 kgs

## GOVERNMENT'S RECOMMENDED DRUG WEIGHT CALCULATIONS

Thus, the government recommends combined drug weight calculations as follows:

**Fentanyl**: 46.125 kgs of converted drug weight

**Cocaine:** 2.848 kgs

Adding the two weights together, the government reaches a total converted drug weight of 48.973 kgs of converted drug weight. Although the government used different calculation methods, the government has ultimately reached the same base offense level as Probation. 48.973 kgs also corresponds to: "more than 40 kilograms but less than 60 kilograms of converted drug weight." USSG § 2D1.1(c)(11).

In sum, the government recommends using the net weight of the 41 bags of fentanyl and the lower calculation for powder cocaine (as opposed to cocaine base) to arrive at the converted drug weight of 48.973 kgs, which corresponds with offense level 18. USSG § 2D1.1(c)(11).

Thus, the government agrees with, albeit through a different calculation, and recommends the information listed in the PSR listed below:

Total Offense Level 18

Minus Three for Acceptance of Responsibility

Adjusted Offense Level 15.

Criminal History Category IV

Guideline Range: 30-37 months

I.     **SENTENCING RECOMMENDATION**

      a. **Legal Standard**

The Court should impose a sentence that is sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin by calculating the correct sentencing range under the Guidelines. *Id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in § 3553(a). *Id.* at 991-93. As applicable here, these factors include:

1. The nature and circumstances of the offense and the history and characteristics of the Defendant;
2. the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
3. the need for the sentence imposed to afford adequate deterrence to criminal conduct;
4. the need for the sentence imposed to protect the public from further crimes of the defendant; and
5. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### b. Recommended Sentence and Section 3553(a) Factors

For the reasons set forth below, the government recommends that the Court sentence the defendant to a period of 37-months in custody, to be followed by a three-year period of supervised release. A sentence with these terms would be sufficient, but not greater than necessary, to meet the goals set forth in 18 U.S.C. § 3553.

The government's recommendation is made for the following reasons.

1. **The nature and circumstances of the offense and the history and characteristics of the Defendant**.

First, the nature and circumstances of the offense and the history and characteristics of the defendant weigh in favor of the government's requested sentence. The defendant sold 3.4 grams of cocaine to the UC, and was in possession of an additional amount of cocaine that ultimately weighed 14.3 grams net. The defendant had a large number of bags which contained suspected fentanyl (41 bags), and one of those bags was later tested and confirmed to contain fentanyl. Defendant's distribution of cocaine, possession with intent to distribute cocaine, and possession with intent to distribute fentanyl warrant the 37-month prison sentence requested by the government.

Second, defendant's criminal history indicates that this is not defendant's first attempt at selling drugs. According to the PSR, defendant's first listed conviction is from an incident in March of 2019. PSR ¶ 32. This case resulted in a conviction for a violation of California Penal Code § 32 (Accessory After The Fact) in September of 2019. *Id.*. In the March 2019 case, an officer on foot patrol observed the defendant completing a hand-to-hand narcotics transaction. *Id.* The defendant fled but was eventually detained. Defendant was in possession of heroin, cocaine base, cocaine salt, and fentanyl. *Id.* The defendant remained in violation status from November 2019 until his probation was terminated in May of 2024. *Id.*

Despite the first conviction, defendant did not refrain from engaging in drug sales. Less than a year later, in November of 2019, a plainclothes SFPD Officer observed the defendant selling drugs. PSR ¶ 33. As the Officer approached, the defendant ran. *Id.* After a chase that lasted approximately a block, defendant threw a bag. *Id.* Defendant was searched and found to be in possession of $363, cocaine salt, cocaine base, heroin, and, fentanyl. Defendant's case (CR-19-645-01) resolved in June of 2020 here in federal court for 14 months in custody and four counts of possession with intent to distribute a controlled

substance. *Id.*

Shortly after the November 2019 incident, defendant was caught with drugs in San Francisco for the third time. On February 18, 2020, defendant was observed running toward Polk Street and later located in a nearby car. PSR ¶ 34. Officers arrested defendant for an outstanding federal warrant. *Id.* Officers found fentanyl, methamphetamine, cocaine salt, cocaine base, and heroin on defendant's person. *Id.* Officers later found $674 along with additional heroin, fentanyl, methamphetamine, and cocaine base in the vehicle. *Id.* Defendant admitted the additional drugs in the vehicle belonged to him. *Id.* This case resolved here in federal court in June of 2020 for 14 months and three counts of possession with intent to distribute. *Id.* The fact that the defendant was in possession of multiple, various types of drugs each time he was arrested demonstrates that he is an established drug dealer seeking to sell whatever drug will sell.

As a result, the current case represents the defendant's fourth case which resulted in felony drugs convictions, and the fifth case where the facts involved distribution or possession with intent to distribute controlled substances. Defendant has repeatedly engaged in this conduct over a relatively short period of time from 2019 through 2024. Thus, this factor weighs heavily against the defendant and strongly in favor of the top of the guidelines at thirty-seven (37) months. In sum, the defendant is a recidivist drug dealer who has not been deterred by his prior state and federal convictions, including his prior 14-month federal sentence for drug trafficking.

2. **The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense**.

This factor also weighs in favor of the government's recommendation. Defendant's prior sentence in Superior Court resulted in probation. Defendant's two prior federal court sentences resulted in a 14-month sentence. However, even after receiving a federal sentence exceeding a year, defendant continued to sell drugs while defendant was on supervised release. As a result, it is imperative that defendant's current sentence exceed his prior sentence to reflect the seriousness of the offense and to promote respect for the law. The 37-month sentence would appropriately increase the defendant's prior sentences to provide just punishment for the repeated crimes and third case in federal court.

3. **The need for adequate deterrence and to protect the public from further crimes of the defendant**.

These factors also weigh in favor of the government's recommended sentence.

Deterrence appears to be an important factor in this case – both general and specific deterrence. Defendant appears to be going to great lengths to continue to sell drugs in San Francisco. According to the PSR, defendant was deported to Honduras in March of 2021 upon his release from his 14-month federal sentences. PSR ¶ 33. However, defendant failed to report to probation upon return to the United States and continued committed crimes by selling drugs. *Id.* Defendant has demonstrated an unwillingness to abide by the laws of the United States and by the terms of his supervised release. A significant sentence is needed to deter the defendant from this pattern of breaking the law.

Similarly, a significant sentence is needed to protect the public from further crimes from the defendant. This case represents the third case in federal court in which the defendant has been charged with possessing fentanyl (among other drugs) with the intent to distribute. The danger posed by defendant's continual drug sales, and possession with intent to sell drugs, particularly fentanyl, cannot be overstated. It is well documented that fentanyl can be deadly. The potency of fentanyl is such that it does not require what some may consider a "large amount" to lead to a tragic consequence. For context, just "two milligrams of fentanyl can be lethal..." https://www.dea.gov/resources/facts-about-fentanyl. Two milligrams is equal to .002 grams, or, two thousandths of a gram.

Thus, defendant's possession of 41 bags of fentanyl (with the one bag tested and weighed determined to be .45 grams) represents a potentially lethal amount of fentanyl in defendant's possession in this case. Therefore, defendant's continued drug sales of fentanyl and cocaine pose a significant risk to the health and safety of the community and a 37-month sentence at the top of the guidelines is necessary to protect the community from further crimes of the defendant.

For all the reasons set forth above, the Court should sentence the defendant to a 37-month term of imprisonment, to be followed by a three-year term of supervised release subject to the standard terms and special conditions proposed by Probation. The government recommends that this sentence be served consecutive to any sentence imposed as a result of defendant's Form 12 violations.

DATED: November 7, 2024            Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

/s/Josiah Bournes
JOSIAH BOURNES
Assistant United States Attorney

**Exhibit A**: **Cocaine From Betanco's Jacket**



**Exhibit B: Fentanyl From Betanco's Jacket**

UNITED STATES' SENTENCING MEMO                12
24-CR-247 RS



**Exhibit C: Narcotics Lab Report**

UNITED STATES' SENTENCING MEMO
24-CR-247 RS
13

# ALAMEDA COUNTY SHERIFF'S OFFICE
## CRIME LABORATORY EXAMINATION REPORT

2901 Peralta Oaks Court, 3rd Floor, Oakland, CA 94605
Phone (510) 382-3300, FAX (510) 382-3344

| SUBMITTING AGENCY | | LABORATORY NUMBER |
|---|---|---|
| San Francisco Police Department | | L24-0059-1 |
| EXAMINATION REQUESTED BY | VICTIM OR SUSPECT | CASE NUMBER |
| Officer L. Smith | (S): BETANCO, Erik | 240011368 |
| DATE(S) OF RECEIPT | DATE(S) OF ANALYSIS | DATE OF REPORT |
| 1/11/2024 | 1/11/2024 | 1/11/2024 |

### Evidence Description

| 1 | One sealed plastic bag containing:<br>- One press-lock plastic bag holding one knotted plastic bag containing one empty press-lock plastic bag and forty-one press-lock plastic bags holding white chalky material, one examined (1A).<br>- One press-lock plastic bag holding one knotted plastic bag containing:<br>    - Loose off-white chunky material, examined (1B).<br>    - One press-lock plastic bag holding off-white chunky material, not further examined.<br>- One press-lock plastic bag holding off-white chunky material, not further examined. |
|---|---|

### Examination Results and Conclusions

| 1A | **Examined utilizing chemical tests and Gas Chromatography Mass Spectrometry (GC/MS) and was determined to contain 4-ANPP and Fentanyl. Net Weight = 0.45 gram(s).** |
|---|---|
| 1B | **Examined utilizing chemical tests and Fourier Transform Infrared Spectroscopy (FTIR) and was determined to contain Cocaine Base. Net Weight = 14.24 gram(s).** |

### Evidence Disposition

Upon completion of the examinations, the evidence was resealed into the original evidence containers and was prepared for release to the submitting agency.

Penny L. Ritter
Criminalist III

Technical Reviewer

Administrative Reviewer

Page 1 of 1